LECHE, J.
The Godchaux Company, Incorporated, enjoined the sheriff and ex officio tax collector of the parish of St. Bernard from enforcing the collection of a drainage tax, and prays for a decree against said tax collector and the Bayou Terre aux Bceufs drainage district, declaring said tax illegal, null, and void. From a judgment dissolving said injunction and refusing the relief prayed for, plaintiff then took the present appeal.
The facts are that the Godchaux Company owns the “Contreras” plantation which is situated in the parish of St. Bernard and .within the limits of the Bayou Terre aux Bceufs drainage district. A bayou, which at some time in the past had been a running stream, but which had become dry as sediment filled and z-aised the bottom of it, called the Bayou Terre aux Bceufs, runs through and divides the said Contz-eras plantation. The lands along the banks of the said bayou are comparatively high, but slope down towards the rear of the plantation, where they become marsh or prairie lands, practically level with the waters of the Gulf of Mexico.
Some years ago, with a view of dredging the Bayou Terre aux Boeufs and of establishing and building a system of drainage for all the lands situated in the surrounding country and including the plaintiff’s plantation, the Bayou Terre aux Boeufs drainage district was, pursuant to the laws of this state, chartered and organized.
Several special elections were held, and, in accordance with the vote of a majority in amount and number of the property taxpayers qualified to vote under the Constitution and laws of the state, an ad valorem tax of 5 mills and two acreage taxes, one of 6 cents and another of 3 cents, were levied and assessed against all the property within the drainage district. On August 28, 1912, another election was held, ratifying the former levies of a 5-mill ad valorem tax and the 6 and 3 cents acreage taxes, and also levying an additiozial acreage tax of 16 cents per acre on all the lands situated within the drainage district. Thereupon these taxes were funded into bonds, in the sum of $500,-000, all of which, except $40,000, have been sold, and the proceeds were spent in carrying out the system of drainage inaugurated by the board of commissioners of the drainage district.
Plaintiff does not contest the legality or validity of the ad valorem tax nor of the 6 and 3 cents acreage taxes. It contends that it is not liable for the 16 cents acreage tax, for the reason that said tax was levied without proper authority, and, in the alternative, in case the court should hold that there was authority for the levy of said tax, it contends that its marsh lands, forming part of the Contreras plantation, amounting to 3,635.52 acres, which are not subject to gravity drainage, have not been and' will not be benefited by the payment of said tax, and, if compelled to pay the same, it will be deprived of its property without due process of law and in violation of the Fourteenth Amendment to the Constitution of the United States.
It is admitted that the 16 cents per acre-acreage tax was levied annually, and that it was paid by plaintiff for the years 1912, 1913, and 1914, and it appears from the rec *815 ord that the present proceeding to annul and avoid said tax and to enjoin its collection was only filed on May 29, 1916. The record also contains evidence, introduced, however, over the objection of defendants, that there are approximately 565 acres of land on the Contreras plantation subject to gravity drainage, and that the rest of said plantation, consisting of 3,635.52 acres mostly marsh, cannot be drained by gravity.
Against this demand various defenses were made, only one of which we propose to discuss, as we believe the fundamental law of the state places it beyond the power of the court to grant the relief prayed for by plaintiff.
The second and last clause of paragraph 3 of article 281 of the Constitution, provides that:
“All bonds heretofore issued under and by virtue of this article 281 of the Constitution by the governing authority of any subdivision [which is elsewhere defined as including a drainage district] which have heretofore not been declared invalid by a judgment of a court of last resort in the state of Louisiana and more than sixty (60) days have elapsed since the promulgation of the proceedings evidencing the issuing of said bonds, are hereby recognized and declared to be valid and existing bonds and obligations of the district or subdivision issuing the same, and no court shall have jurisdiction to entertain any contest wherein their validity oy constitutionality is questioned.”
The foregoing amendment to article 281 of the Constitution was adopted in November, 1914, and had been in force more than one year, when on May 29, 1916, the present suit was filed.
It therefore follows that this court is without jurisdiction, unless, as contended by plaintiff, this is not a suit contesting the validity of the bonds, and if it is such a suit, unless, as further contended by plaintiff, said bonds were not issued under and by virtue of article 281 of the Constitution.
We do not believe that either of these last two'contentions of plaintiff are maintainable.
As to the first, it is shown by the record that if plaintiff’s lands and all other lands of the same character, situated iu the Bayou Terre aux Bceufs drainage district, are declared not subject to the payment of the 16 cents acreage tax, then the bonds into which said tax was funded, and of which $460,000 in amount have been issued and sold, will, for the lack of funds, be dishonored, and there will be a default in the payment of interest thereon. It is then apparent that if the fund, which consists of the very same taxes that plaintiff is attempting to avoid, and out of which only the bonds may be paid, is destroyed, the bonds themselves are bound to be thereby affected and their validity impaired. As appropriately said by counsel for defendants, if the fund, the only foundation upon which the bonds rest, is taken away, the bonds themselves, the superstructure, are bound to fall. Sublato fundamento, cadit opus. Commenting upon the relation between bonds and the taxes assessed for their payment, the United States Supreme Court, in the case of Louisiana v. Pilsbury, 105 U. S. 288, 26 L. Ed. 1090, says:
“The annual tax was the security offered to the creditors; and it could not be afterwards severed from the contract without violating its stipulations, any more than a mortgage executed as security for a note given for a loan could be subsequently repudiated as forming no part of the transaction.”
It is true that no bondholder, as, such, is party to this proceeding, but that fact can be of little comfort to plaintiff, as it would only be additional ground to dismiss its suit for want of proper parties.
Having then reached the conclusion that plaintiff’s demand, if granted, would impair the validity of the bonds into which the tax in contestation was funded, the next inquiry is whether the said bonds were issued under and by virtue of article 281 of the Constitution. The affirmative of that proposition seems equally clear to us.
Plaintiff takes the position that its lands, being of such a character that they have to *817 be leveed and pumped in order to be drained and reclaimed, could only be subjected to an acreage tax upon, the petition of not less than a majority in acreage of the property taxpayers, resident and nonresident, in the area to be affected, as provided in paragraph 4 of article 2S1 of the Constitution, as that article stood after its amendment of 1910 (see Act No. 197 of 1910). It further claims that the 16 cents acreage tax not having been levied in accordance with the provisions of said paragraph, the board of commissioners was without authority to assess the same, and therefore that the bonds into which said tax was funded are not such bonds as are protected from being assailed in the courts of this state, under the quoted amendment to article 281, adopted in November, 1914. In other words, we understand plaintiff’s contention to be that the forms prescribed by article 281 not having been observed by the defendant drainage district, the said bonds were therefore not issued under and by virtue of article 281 of the Constitution, and are subject to attack, and not protected by the prescription amendment to article 281 adopted in 1914.
Plaintiff, in attempting to evade the effect of the curative prescription provided for in the last clause of article 281, as already quoted herein, asks us to do the very thing which we are therein inhibited from doing'; it asks us to inquire into the validity of the tax and therefore into the validity of the bonds in order to ascertain whether the bonds were issued under and by virtue of article 281. It is a sufficient answer to this contention on its part to say that the bonds purport on their face to have been issued under and by virtue of article 281 of the Constitution; that if there was any irregularity or informality in their issuance, it is cured by the quoted constitutional prescription; and that if, on the other hand, it were necessary to show that all the forms and conditions of the said article 281 have been complied with in the issuance of said bonds before the prescriptive provision could be applied, then that provision would be meaningless and of no effect.
We are therefore of the opinion that plaintiff’s suit attacks and questions the validity of the Bayou Terre aux Bcoufs drainage district bonds, issued in the sum of $500,000 by the commissioners of that district by authority of an election held in said district on August 28, 1912; that said bonds were issued under and by virtue of article 281 of the Constitution; and that .therefore the courts of this state, whose sole source of power and authority is derived from the Constitution, are without jurisdiction to entertain said suit.
The conclusions which we have thus reached are directly in conflict with our ruling in the case of Shaw v. Board of Commissioners, 138 La. 923, 70 South. 910, where we held that an attack upon a pledge did not, of necessity, involve an attack upon the bond which it secures. That ruling may be absolutely correct in some instances, but it is overruled in so far as it affects the issues in the present case.
The judgment appealed from is affirmed.