O’NIELL, C. L
 

 This is a suit to annul a municipal bond issue, and to forbid the may- or and council of the city to dispose of the bonds. The district court rejected the plaintiff’s demand and dismissed his suit. He has appealed from the judgment.
 

 The bond issue is for $70,000. It was authorized by a majority vote of the electors, at an election held under the provisions of Act 80 of Ex. Sess. 1921. The statute was enacted pursuant to paragraph'(m) of section 14 or artice 14 of the Constitution, viz.:
 

 “(m) Eor the purpose of constructing, acquiring, extending or improving any revenue-producing public utility, the Legislature may authorize municipal corporations to issue bonds secured exclusively, principal and interest, by mortgage on the lands, buildings, machinery and equipment and by pledge of the income and revenues of such public utility. Such bonds shall not be a charge upon the other income and revenues of the municipality and shall not be included in computing the indebtedness of the municipality for the purpose of any limitation herein.”
 

 The Act 80 of 1921 is in the same language, substantially, as the authority for enacting it. It authorizes any and all municipalities (except New Orleans) to issue bonds for the purpose of constructing, acquiring, extending or improving any revenue-producing public utility, and to secure the payment of the bonds, in principal and interest, exclusively by a mortgage of the lands, buildings, machinery and equipment, and by a pledge of the income and revenues, of such public utility, provided the bond issue be authorized by a majority vote of the duly qualified resident electors of the municipality, at an election held- as provided in the statute.
 

 The 'allegation on which this spit is founded is, stated broadly, that the municipality has mortgaged the lands, buildings, machinery . and equipment, and pledged the income and revenues, of one public utility for the purpose of constructing, acquiring, extending or improving another public utility. It is alleged that the electric light plant is being hypothecated for the purpose of extending and improving the waterworks system, by constructing and acquiring a water filtration plant. ' •
 

 The language of the Constitution and of the statute does not purport to authorize a municipality to hypothecate one of its pubr lie utilities for the purpose of constructing, acquiring, extending or improving another, separate,' different and independent utility. If Donaldsonville’s waterworks plant and electric light plant were separate and apart, working independently of each other, it might well be argued that the city could not hypothecate \ the electric light plant and its revenues, either with or without the .waterworks plant and its revenues, for the betterment of the waterworks plant. But that is not the case. The electric light and waterworks plant is operated as one plant, serving both purposes. It was so constructed twelve years ago, and has been so operated ever since. All of the machinery and equipment that is used for supplying either water or lights—all of the machinery and equipment that is under roof—is under one roof. The power is furnished by crude oil engines, which run the dynamos that supply the electricity for the electric pumps that furnish the water throughout the city, and the dynamos that' furnish the electric current that is used throughout the
 
 city,
 
 for power and lights. The engines use a large quantity of water in their jackets, to prevent overheating, expanding and breaking. The electric pumps, which belong to the waterworks department, also supply the water for the engines that’
 
 *741
 
 operate both the waterworks and the electric lights.. Either the waterworks or the electric light plant might be operated alone, by having a smaller engine only to run the waterworks pumps, or a smaller pump only to supply water for the electric light engine. But the fact is that what might' be two separate and independent plants is only one plant. The reason is that it is cheaper to operate one plant than two plants for both services. One building, one set of engines, one crew of men, one overhead expense, one set of tools, one supply of fuel, lubricants, etc., takes the place of two. It would be not practicable for any small municipality, owning and operating a waterworks and electric light plant, to operate two plants, independently, as separate public utilities. A waterworks plant—except perhaps in a large city—is unprofitable at best, and would be very expensive to operate alone, bearing all of the overhead expense. However costly it may be to operate, a waterworks system is as important as electric lights are to a well-governed city. Usually—and perhaps in every city that owns and operates both the waterworks and the electric light and power system—there is only one plant, operated as Donaldsonville operates hers. That is a matter of common'knowledge, and of which the members of the constitutional convention who authorized this statute of 1921, and the members of the Legislature who enacted the law, were not ignorant. They knew that it would be not feasible to mortgage only the dynamo and electric light wires and poles, or only the water pumps and mains and laterals, belonging to a municipal waterworks and electric light plant. They knew that, in order to mortgage the machinery and equipment used for either the waterworks or the electric light service, it would be necessary to mortgage machinery employed in both services, for the improvement or extension of either service. Therefore, the authors of paragraph (m) of section 14 of article 14 of the Constitution, and the authors of the Act SO of 1921, when they authorized the municipalities to mortgage the' lands, buildings, machinery and equipment, and to pledge the income and revenues, of “any revenue-producing public utility,” to secure the payment of bonds to be issued for the purpose of constructing, acquiring, extending or improving “such public utility,” intended that a waterworks and electric light plant, operated as Donaldsonville’s plant is operated, should be regarded as one public utility. It is not important whether such a waterworks and electric light plant should be deemed one utility or two utilities, as an abstract idea. It is one utility, within the meaning of the law on the subject; otherwise the law would be futile.
 

 It appears that a small part of the proceeds of this bond issue is to be spent for electric motors, to be used in the light service; which motors, the superintendent says, “are not absolutely essential to the electric plant.” Another part of the fund—perhaps as much as $7,000—is to pay ’off the balance of a debt incurred in the original construction of the whole plant. The balance of the $70,000 is to pay for the, construction of a filtration plant, for filtering the water that is supplied to the inhabitants of the city. The filtration plant will be, mainly, a betterment of the waterworks system; but it will also, in some measure, improve the electric light plant. The sediment in the river water, circulating through the jackets of the engines, gets into the valves, stops the flow of water, and causes the engines to overheat and smash. There were several such accidents, one of which cost the city nearly $10,000. The filtration plant will obviate that danger, and, to that extent, improve the electric light plant as well as the waterworks plant. The filtration plant will also better the electric light service in another way. The reservoirs
 
 *743
 
 that are to'be installed will hold a supply of water sufficient to allow the waterworks ■pumps to be stopped during the hours v^heu the electric current is most in demand, and allow the engines to devote all of their energy to furnishing light when the light is needed most. It appears from the testimony of the superintendent of the plant that that improvement in the electric light service will be very important. All of which goes to show that, practically if not theoretically, this waterworks and electric light plant must be deemed one public utility, which may be hypothecated for the betterment of either the waterworks or the electric light and power service, or for both services, indiscriminately.
 

 The city filed a plea of prescription in the district court, and reurges the plea here; but our conclusion that the judgment on the merits of the case is correct makes it unnecessary to consider the plea of prescription.
 

 The judgment is affirmed.